Motion for judgment against the defendant, Hallsey, and two others, his sureties on a bond given by Hallsey, conditioned that he would keep within the prison bounds in the county of Tyrrell.
The case was this: Plaintiff brought suit against the defendant Hallsey in Tyrrell County court, and obtained a judgment by default, whereupon ava. sa. issued, on which Hallsey was arrested and entered, together with the other defendants, into the bond on which the motion was made. After the bond was executed Hallsey obtained on affidavit writs of supersedeas andcertiorari to the county court of Tyrrell, and at September Term, 1823, of Tyrrell Superior Court, the certiorari was returned, and the cause ordered to be placed on the trial docket, with leave to Hallsey to plead. This motion was then made on the bond, and plaintiff offered to prove that after the writs of supersedeas and certiorari had been granted and delivered to those to whom they were directed, Hallsey had been seen at large without the prison bounds. The presiding judge, Donnell, refused the motion, and the plaintiff appealed to this Court.
This is a motion for judgment on a bond to keep the prison bounds, the condition of which is alleged by the plaintiff to have been broken by the defendant Hallsey having gone beyond the limits in consequence of acertiorari and supersedeas issued by a judge of the Superior Court. It is urged by the plaintiff that Hallsey, being in custody upon a ca. sa., thesupersedeas could not have the effect of legally discharging him therefrom, and those authorities have been referred to, which show that if an execution has been begun it shall be completed notwithstanding the delivery of a writ of supersedeas, or the allowance of a writ of error. That the law is not in England, and that a person in custody upon a ca. sa., is not entitled to his discharge, notwithstanding a writ of supersedeas be delivered to the sheriff, is not to be controverted. It is there held that a capias, being a complete execution, a writ of error comes too late afterwards, and, therefore, the party shall remain in prison, notwithstanding the writ of error. This doctrine pervades the ancient cases, and is admitted, arguendo, in modern ones; but I have met with no case where it has been acted *Page 307 
on since the statutes of 3 James I., chs. 8, 16, and 17; Car. 2, ch. 8, where bail has been actually put in, to answer the debt and damages, pursuant to those statutes. It is revolting to common sense that a man who has carried his cause before a higher tribunal under a belief that the law has not been administered to him, or that injustice has been done him below, should be detained in prison after he has given bond as security to respond the ultimate recovery, and that, too, upon the principle that the execution has been executed and cannot be undone. But the Gordian knot might be cut by letting him out of goal. But it is obvious that there is a very remote analogy between the writ of certiorari
as used in England and in this State; they are scarcely alike in anything but name. There it sometimes issues out of (552) Chancery, and sometimes out of the King's Bench, and is an original or judicial writ. It does not issue after judgment but in very special cases, and from absolute necessity, as where the inferior court refuses to award execution, then a certiorari will issue after judgment for the sake of doing justice to the parties. So, where the inferior court acts in a summary method or in a new course different from the common law, acertiorari lies after judgment, though a writ of error does not. 1 Lill. P. R., 252-3; 1 Salk., 263. It is, therefore, only in a very few cases that the object of a certiorari can be to obtain a new trial; and when the record is removed before trial, the whole proceedings are begun de noro. It is also to be granted on matter of law only.
In this State the writ is invariably granted after trial in the inferior court; a case must be made out on the merits, upon affidavit, except where it issues to bring up a record appealed from but not filed in time, and the question in the Superior Court always is whether there shall be a new trial. In addition to this, security must be taken by the clerk of the county court to which it issues in the same manner as on appeals. This slight view of the subject shows how little similitude there is between the two writs, and how incongruous it would be to engraft upon ours the strict practice and rigorous principles enforced in the English courts, which may well harmonize with their systems, but are utterly discordant to ours.
The truth is, this writ has grown up with the exigencies of the country, and has been moulded to suit the convenience of the citizens, and although it has been highly assistant in the administration of justice, the principles and rules which govern it emphatically rest on the common law of the State. Much respect is due to long established usage, founded on public convenience, and implicitly sanctioned by legislative recognition. The great utility of the writ would (553) *Page 308 
at once be subverted if it did not restore property seized or deliver a man from prison, for the ultimate redress by a new trial would come too late after the worst consequences of defeat had been suffered. I am disposed to adhere to the settled practice of the country, and therefore think the judgment should be affirmed.